O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DANNY L. R. II,<br><br>   Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>   Defendant. | No. SA CV 19-498-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

I.

## PROCEEDINGS

Danny L. R. II[1] ("plaintiff") filed this action on March 13, 2019, seeking review of the Commissioner's[2] denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on April 3, 2019, and

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

April 10, 2019. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on January 13, 2020, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1970. [Administrative Record ("AR") at 27, 151.] He has past relevant work experience as a finish carpenter; as a bicycle repairer; and as an assembler, bicycle II. [Id. at 27, 62-63.]

On May 22, 2015, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since June 4, 2013. [Id. at 15; see also id. at 150-54.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 95-96.] A hearing was held on February 8, 2018, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [Id. at 34-73.] A vocational expert ("VE") also testified. [Id. at 61-72.] On April 19, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from June 4, 2013, the alleged onset date, through September 30, 2017, the date last insured. [Id. at 15-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 148-49.] When the Appeals Council denied plaintiff's request for review on January 8, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from June 4, 2013, the alleged onset date, through September 30, 2017, his date last insured. [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of right calcaneal fracture status post surgery with residual degenerative joint disease and pain; chronic pain syndrome; obesity; right knee problems status post surgery with pain;

depression not otherwise specified; anxiety not otherwise specified; bipolar II disorder; panic disorder; and post-traumatic stress disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 19.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [He can] lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently . . . except he can stand and/or walk a combined total of 2 hours in an 8-hour day. He may sit 6 hours in an 8-hour day. He requires a sit/stand option at 45 to 60 minute intervals for 3 to 5 minutes at a time, during which period he may remain on task. He may occasionally climb ramps and stairs, and balance. He may never climb ladders, ropes, scaffolds, or crawl. He may never push, pull, or engage in foot pedal operations with the right lower extremity. He must avoid more than occasional exposure to extreme cold and vibration. He should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights. He can learn, remember and perform simple, routine and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable and low stress work environment (defined as on[e] in which there are no rapid production pace tasks, few work place changes, and no close supervision). He can attend and concentrate for 2 hours at a time with normal breaks. He may have occasional interaction with supervisors, coworkers and the public.

[Id. at 21.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a finish carpenter; as a bicycle repairer; and as an assembler, bicycle II. [Id. at 27, 66.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "small product assembler"

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

5

(Dictionary of Occupational Titles ("DOT") No. 739.687-030), and as a "collator" (DOT No. 653.687-010). [AR at 28, 66-67.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 4, 2013, through September 30, 2017, the date last insured. [Id. at 28-29.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the opinion of the consultative examiner, William Wang, M.D., and the opinion of the reviewing physician, E. Christian, M.D.; and (2) rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

### A. MEDICAL OPINIONS

#### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

6

404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as

substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**2. Dr. Wang and Dr. Christian**

On October 10, 2015, Dr. Wang issued his report with respect to his September 25, 2015, complete orthopedic evaluation of plaintiff. [AR at 327-33.] Dr. Wang reported that in 2011 plaintiff sustained a "right calcaneal fracture" as a result of a severe motor vehicle accident that occurred when he accidentally drove off a freeway overpass while answering his telephone, and crashed onto the freeway below. [Id. at 328.] Plaintiff was told by a surgeon at that time that his injury was not operable; however, he "eventually went to see a podiatrist who decided to perform a subtalar fusion in 2011." [Id. at 329.] After the surgery, plaintiff felt the pain was improving somewhat, but stopped taking his heavy pain medication because he did not tolerate it very well. [Id.] Plaintiff reported that the pain seems to get worse with walking, and that a cortisone injection did not seem to help very much. [Id.] He also reported that he continued to have severe pain on the lateral side of the right heel that he described as a throbbing-type pain, exacerbated by standing or walking, and as a 6 to 7 on a 10-point pain scale. [Id.] As relevant to plaintiff's right heel injury, Dr. Wang noted normal gait; ability to stand on heels and tiptoes without difficulty and with no evidence of weakness in the ankle flexors or extensors; plaintiff got on and off the examination table without difficulty and did not require the use of an assistive device; there was lateral prominence of the right ankle area, and plaintiff's heel is "in slight varus but is plantigrade"; there was some tenderness to palpation over the sinus tarsi but no evidence of swelling, palpable mass, or inflammation; range of motion was 20/20 degrees of dorsiflexion bilaterally, and 40/40 degrees of plantar flexion bilaterally; and subtalar range of motion was intact bilaterally. [Id. at 332.] Dr. Wang diagnosed plaintiff with "right calcaneus fracture with posttraumatic subtalar arthritis status post fusion"; and "subtalar nonunion." [Id. at 333.] He noted that "[o]n clinical exam, it appears that [plaintiff] still has a significant amount of subtalar motion, which indicates that he has likely undergone a painful nonunion." [Id.] Based on his examination, Dr. Wang opined that plaintiff "can lift and carry 10 pounds occasionally and 10 pounds frequently . . . .

1 [C]an stand and walk for 2 hours in an eight hour workday. . . . [and] can sit for 6 hours in an eight
2 hour workday." [Id.] He stated that there were "no other postural, manipulative, visual,
3 communicative, or environmental limitations." [Id.]

4     On November 4, 2015, Dr. Christian, the non-examining reviewing physician, also limited
5 plaintiff to standing and walking for two hours in an eight-hour workday, sitting for six hours in an
6 eight-hour workday, and lifting and carrying ten pounds occasionally and ten pounds frequently.
7 [Id. at 82.]

8     The ALJ assigned "great weight to Dr. Wang's statements [regarding plaintiff's ability to
9 stand, walk, and sit during an eight-hour workday] as they are supported by physical examination
10 findings such as that [plaintiff] walked with a normal gait, was able to perform a tandem gait, was
11 able to squat, was able to stand on the heels and tiptoes without difficulty, and exhibited no
12 evidence of weakness in the ankle flexors or extensors." [Id. at 24 (citations omitted).] He also
13 noted that Dr. Wang verified that plaintiff's muscle tone was good bilaterally, with strength in the
14 upper and lower bilateral extremities at 5 out of 5; plaintiff got into and stood up from a chair
15 without difficulty; got on and off the examination table without difficulty; and did not require the use
16 of an assistive device to walk. [Id. at 25.] The ALJ stated that Dr. Wang's statements were
17 consistent with other evidence of record documenting "mainly normal physical functioning such
18 as physical examination records confirming no musculoskeletal abnormalities in relation to
19 [plaintiff's] right heel or his right knee." [Id. (citation omitted).] He also assigned great weight to
20 Dr. Christian's identical opinion regarding plaintiff's standing/walking/sitting limitations as
21 "consistent with Dr. Wang's analysis and other evidence in the record noted immediately above."
22 [Id.]

23     The ALJ, however, also specifically stated that he assigned "no weight" to Dr. Wang's and
24 Dr. Christian's finding that plaintiff "can lift and carry 10 pounds occasionally and 10 pounds
25 frequently." [Id.] He pointed out that physical examination records, including Dr. Wang's own
26 findings, "support a lesser amount of restrictions." [Id.] He specifically noted Dr. Wang's findings
27 that plaintiff's muscle tone was good bilaterally, "with strength in the upper and lower bilateral
28 extremities 5 out of 5 and that [his] handgrip strength bilaterally was 60-60-60 pounds on testing."

[Id. (citation omitted).] The ALJ also stated that "other evidence documents mainly normal physical functioning such as physical examination records confirming no musculoskeletal abnormalities in relation to [plaintiff's] right heel or his right knee." [Id. (citing id. at 504 (a January 25, 2018, treatment note reflecting no mention at all of plaintiff's right heel or knee, although finding "[d]ecreased strength at wrist and finger extension source triceps strength is preserved, equivocal findings of brachial radialis," and "[w]eakness of the wrist extensors finger extensors his paresthesia of the dorsum of his hand in the first webspace, triceps strength is preserved, equivocal findings of the brachial radialis strength," and diagnosing him with "Radial nerve palsy, left")).]

The ALJ's hypothetical to the VE (as well as his RFC determination) adopted Dr. Wang's and Dr. Christian's finding that plaintiff is able to stand/walk for a combined total of up to two hours and sit for six hours in an eight-hour workday, but also presented a hypothetical individual who is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently and required a sit/stand option at 45 to 60 minute intervals for 3 to 5 minutes at a time. [See id. at 21, 63-64.] The VE testified that even with the hypothetical limitations "[t]here's a lot of task-oriented jobs . . . in production-oriented areas [that] offer sit/stand options [because] [y]ou're working from a high bench, a fixed position [and] generally presented with a stool that enables you to sit or stand at will . . . [and] remain on task." [Id. at 65.] The VE also testified, however, that "main[ly] . . . because of the sit/stand option," if the hypothetical individual was limited to sedentary work, which "tends to be performed more at desk height because it is a job that you're generally going to be sitting for six hours a day," while there were occupations that could be performed, the number of available positions would be eroded by "90 percent . . . or so and that's at best."[6] [Id. at 68-69.]

Plaintiff contends that the ALJ failed to adequately explain why he was rejecting the

---

[6] Specifically, the VE suggested the hypothetical individual would be able to perform the sedentary occupations of lens block gauger (DOT No. 716.687-030) and lamp-shade assembler (DOT No. 739.684-094), but the available number of each of those positions would be eroded by 90% due to the sit/stand option, leaving 1,400 jobs and "well under 4,000 jobs in the U.S. economy" respectively. [AR at 69.]

sedentary lift and carry opinions of Dr. Wang and Dr. Christian, and "simply substituted his own lay opinion for that of the opinion from a medical professional." [JS at 7 (citing Tackett, 180 F.3d at 1102-03; Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)).] He submits that the error was not harmless in light of the VE's testimony regarding the erosion of available occupations for the hypothetical individual with the full sedentary limitations found by Dr. Wang. [Id. at 8 (citing AR at 68-71).]

Defendant responds that the ALJ adequately explained why he rejected the lifting restrictions found by Dr. Wang and Dr. Christian, and even "added restrictions to the RFC that went further than either [of] the doctors opined." [Id. at 11.] Defendant points out that although Dr. Wang noted plaintiff's complaint of tenderness to palpation in the lumbar spine, Dr. Wang otherwise reported no findings with respect to the thoracic, lumbar, or cervical spines, and no negative findings at all with respect to his upper extremities, including shoulders, elbows, forearms, wrists, and hands. [Id. (citing AR at 24-25, 330-31).] In fact, Dr. Wang reported, among other things, that plaintiff's strength "is 5/5 in the bilateral upper extremities" [AR at 332], and determined that plaintiff had complete range of motion in his upper extremities, elbows, and wrists, full range of motion in his hips, knees, and ankles, and strength that is "5/5 in the bilateral lower extremities." [Id. at 331-32.] The ALJ also observed that the evidence "confirms that [plaintiff] reported that his knee and ankle pain are treatable with cortisone injections, and that the injections relieve his pain for weeks" [id. at 23 (citing id. at 358)]; that he was prescribed Lyrica for his alleged chronic pain syndrome and made "no complaint of pain at a follow-up visit for medication management" on October 5, 2015 [id. (citing AR at 359, 361-62)]; and that at a January 25, 2018, visit, he "made no complaint at all of musculoskeletal abnormalities or pain related to his right heel or his right knee" (id. (citing id. at 502).] The ALJ also noted that "the record contains little, if any, treatment records after 2016 in relation to [plaintiff's] right knee, right ankle, or chronic pain syndrome." [Id. at 23.] Defendant submits that even if there was error, the error is harmless because plaintiff testified at the hearing that he "had no problems lifting from a seated position, and the jobs the ALJ identified that Plaintiff could still do were performed while seated." [JS at 11 (citing AR at 46).]

Although a close call -- the Court does not find several of the ALJ's reasons to discount Dr. Wang's opinions to be persuasive[7] -- the Court finds that substantial evidence supports the ALJ's determination that Dr. Wang's own findings did not support the restrictive lifting limitation found by Dr. Wang (and accepted on review by Dr. Christian). That is because Dr. Wang's report -- in addition to the treatment record generally -- simply does not reflect any clinical findings or objective signs that would account for a restriction limiting plaintiff to lifting no more than 10 pounds occasionally and frequently.

Accordingly, the ALJ provided a specific and legitimate reason to discount Dr. Wang's and Dr. Christian's lifting limitation and remand is not warranted on this issue.

## B. SUBJECTIVE SYMPTOM TESTIMONY

### 1. Legal Standard

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[8] 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[9] SSR 16-3p supersedes SSR 96-7p,

---

[7] For instance, the ALJ's statements that plaintiff "reported that his knee and ankle pain are *treatable* with cortisone injections, and that the injections relieve his pain *for weeks*" and that plaintiff did not complain of pain at that same medication management follow-up visit [AR at 23 (emphasis added)], do not accurately reflect the record. At best, this October 5, 2015, treatment record reflects that plaintiff's knee and ankle pain has been *treated* by cortisone injections, but also clearly reflects that plaintiff *did* "c/o [complain of] . . . continued pain in the knee and ankle" at that office visit, and also reported that his cortisone injections "last a *few weeks* and then he has *daily pain*." [Id. at 358 (emphasis added).]

[8] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[9] SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability (continued...)

the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence

---

[9](...continued)
claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo, 871 F.3d at 678 n.5 (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

13

thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a

14

plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce his corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014). In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8-9. "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. Id. at *9. The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. Id.

### 2. The ALJ's Determination

The ALJ summarized plaintiff's testimony as follows:

> [He] alleged that the following conditions limited his ability to work resulting in him stopping work on June 4, 2013: crushed heel, broken knee, post traumatic stress disorder, and bipolar disorder.

[AR at 22 (citations omitted).]

The ALJ then discounted plaintiff's subjective symptom testimony as follows:

> In contrast to [plaintiff's] allegations, I find that the objective medical evidence and other evidence of record shows [his] symptoms do not reduce [his] capacity to perform work-related activities to the extent that [he] alleges. In making this finding, I consider all of the relevant evidence in the case record. [Plaintiff's] statements about the intensity, persistence, and limiting effects of alleged symptoms are generally inconsistent with the objective medical evidence of record and other evidence.

15

[Id. (citation omitted).]

Plaintiff contends the ALJ offered "no sufficient articulated rationale to reject" plaintiff's subjective symptom testimony. [JS at 14.] Defendant disagrees. [Id. at 21.]

The Court's review of the ALJ's decision reflects that in discounting plaintiff's testimony, the ALJ generally determined the following: (1) plaintiff's subjective complaints were not supported by the objective evidence; (2) plaintiff's medication and treatment relieved his pain symptoms; (3) plaintiff failed to complain of musculoskeletal abnormalities or pain related to his right heel or right knee at treatment visits; (4) plaintiff's wife's testimony regarding plaintiff's daily activities confirmed "mostly normal functioning"; (5) after November 2016 the record contains "little, if any, treatment records . . . in relation to [plaintiff's] right knee, right ankle, or chronic pain syndrome"; and (6) plaintiff's mental health symptoms were stable with his medication treatment and symptoms appeared when he did not stay on his medication. [AR at 22-24.] The ALJ concluded that "the record as a whole suggests a greater amount of work related abilities contrary to [plaintiff's] allegations." [Id. at 24.]

### 3. Analysis

#### a. Objective Evidence

As discussed above, Dr. Wang's examination and opinion -- other than his discredited lifting limitation -- reflect that plaintiff is capable of a range of light work. The ALJ summarized various imaging evidence, physical examination evidence, treatments, and treatment results, and generally noted that the evidence does not support plaintiff's claim of disabling impairments. [Id. at 22-25.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical

evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5. As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

The Court determines that, in light of Dr. Wang's findings, this was a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony. However, because this cannot be the sole legally sufficient reason for discounting subjective symptom testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discounting plaintiff's testimony.

b.  **Improvement with Treatment and Medication**

The ALJ discounted plaintiff's allegations based on the improvement of his symptoms with treatment and medications, including cortisone injections, Lyrica, and anxiety/depression medications. [AR at 23, 24 (citing id. at 358, 359-62).]

Impairments that can be effectively controlled with medication are not disabling for purpose of determining eligibility for disability benefits. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted); see also Petersen v. Berryhill, 737 F. App'x 329,

332 (9th Cir. June 19, 2018) (citing <u>Warre</u> and finding ALJ properly relied on evidence that the claimant's pain and symptoms were controlled with medication and treatment).

Here, notwithstanding the issues with the ALJ's hyperbole regarding the relief plaintiff purportedly received from his cortisone injections, his other findings regarding the relief plaintiff received from Lyrica and from his anxiety/depression medications, were supported by the treatment record.

Accordingly, the ALJ's finding that plaintiff's pain medication (Lyrica) provided relief from his chronic pain syndrome, and that when he was compliant with his anxiety/depression medications his mental health symptoms are controlled, was a clear and convincing reason to discount plaintiff's subjective symptom testimony.

### c. Lack of Treatment

The ALJ found that there were few if any treatment records after November 2016 related to plaintiff's allegedly disabling right knee, ankle, or chronic pain syndrome. [AR at 23.] Defendant also points out that although plaintiff complained of "significant pain and limitations due to his right lower extremity impairments at the February 2018 hearing (AR 44-46) . . . he did not seek treatment for these allegedly disabling impairments for more than a year," which supports the ALJ's decision to discount his statements. [JS at 23 (citing <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 672 (9th Cir. 2012)).] Plaintiff does not point the Court to any evidence to refute this finding by the ALJ.

The ALJ properly gave less weight to plaintiff's subjective statements based on plaintiff's failure to seek a level or frequency of medical treatment that was consistent with the alleged severity of his subjective symptoms. See <u>Molina</u>, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to

follow prescribed treatment that might improve symptoms"). Indeed, as the ALJ noted, the record does not reflect that plaintiff sought treatment for his disabling knee/ankle pain after November 2016 (and plaintiff has identified no such evidence) -- a treatment gap of more than a year as of the time of the hearing. See, e.g., Chaudhry, 688 F.3d at 672 ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified") (citation omitted).

Accordingly, this was a clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom testimony.

### 4. Conclusion

In addition to the lack of support in the objective medical evidence with regard to plaintiff's allegedly disabling symptoms, the Court determines that several of the additional reasons given by the ALJ discussed above were clear and convincing and supported by substantial evidence. Even if any of the other reasons given by the ALJ that were not discussed herein was not legally sufficient -- and the Court does not make this determination herein -- because there was at least one other legally sufficient reason in addition to the lack of support in the objective medical evidence, this is sufficient to determine that the ALJ did not err when he discounted plaintiff's subjective symptom testimony.

/
/
/
/
/
/
/
/
/
/

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 17, 2020

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE